UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                              **CASE NO: 6:18-cr-54-Orl-31DCI**

**BARRY MARVIN MCBRIDE, JR.**

**ORDER**

This matter comes before the Court after a June 20, 2019 evidentiary hearing on the Motion to Suppress (Doc. 28) filed by the Defendant, Barry Marvin McBride, Jr. (henceforth, "McBride"), and the response in opposition (Doc. 35) filed by the Government.

**I.      Background**

McBride was arrested in the early morning hours of October 25, 2017 after a traffic stop conducted by Officer Gabriel Fragoso of the Winter Garden Police Department. According to Fragoso's report, which he prepared within hours of the arrest, he observed a black Dodge approaching a four-way stop intersection "at a high rate of speed". (Doc. 28-1 at 3). Fragoso, in his patrol vehicle, was heading east on East Bay Street, while the Dodge was southbound on 10th Street. (Doc. 28-1 at 3). Once at the intersection of East Bay and 10th, the Dodge "came to a final stop clearly past the unobstructed stop bar, coming to a final stop in the middle of the intersection." (Doc. 28-1 at 3). The Dodge then proceeded through the intersection; Fragoso made a right turn and followed it. Shortly thereafter, Fragoso stopped the vehicle, which was being driven by McBride. (Doc. 28-1 at 3).

Fragoso exited his patrol vehicle and approached McBride's Dodge from the passenger side. (Doc. 28-1 at 3). He looked through the window at the car's console and "observed a green

leafy substance," which – based on his "training and experience as a law enforcement officer" – he "immediately identified" as cannabis. (Doc. 28-1 at 3). He asked McBride to exit the Dodge and searched him, finding a large sum of cash. After handcuffing McBride and placing him in the back seat of his cruiser, Fragoso searched his car. (Doc. 28-1 at 3). The search turned up, in the console, 3 grams of marijuana and 44 grams of a substance subsequently identified as fentanyl, as well as a Glock handgun under the front passenger seat. (Doc. 28-1 at 3). Fragoso contacted his department and was advised that McBride was a convicted felon. (Doc. 28-1 at 3). At the conclusion of the search, Fragoso transported McBride to the Winter Garden police station. (Doc. 28-1 at 3). In addition to being arrested for possession of the drugs and the weapon, McBride received a citation for running the stop sign.[1] (Doc. 28-1 at 3, Doc. 28-2 at 2).

On March 14, 2018, McBride was indicted on three counts arising from the search and seizure that occurred on October 25, 2017: one count of possession of fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(a); one count of using a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).[2] (Doc. 1 at 1-3).

---

[1] Specifically, McBride was cited for a violation of Fla. Stat. § 316.123(2)(a), which provides in pertinent part that

> Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when the driver is moving across or within the intersection.

[2] McBride was also indicted on a second count of possession with intent to distribute

By way of the instant motion, McBride seeks to suppress all of the evidence obtained as a result of the seizure of his person and subsequent search, including but not limited to the marijuana, the fentanyl, the Glock, the cash, and any statements made during the custodial interrogation following his arrest.

**II.     Legal Standard**

The Fourth Amendment guarantees the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Temporary detention of individuals during the stop of an automobile by police constitutes a "seizure" of "persons" within the meaning of this provision. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The Fourth Amendment requires that an officer making a traffic stop have probable cause to believe a traffic violation has occurred or reasonable, articulable suspicion that the person stopped is engaged in criminal activity. *United States v. Harris*, 526 F.3d 1334, 1337-38 (11th Cir. 2008) (citations omitted). A warrantless search of a vehicle is not unreasonable where a law enforcement officer has probable cause to believe the vehicle is carrying contraband. *United States v. Ross*, 456 U.S. 798, 807, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572 (1982).

**III.    Analysis**

As noted above, Fragoso wrote in his report that he had pulled over McBride's vehicle because McBride "came to a final stop clearly past the unobstructed stop bar, coming to a final stop in the middle of the intersection." (Doc. 28-1 at 3). At the hearing, he backtracked from that characterization, instead testifying that, rather than stopping in "the middle of the intersection," McBride stopped with his vehicle's front wheels in the shallow drainage depression

---

fentanyl that was alleged to have occurred about three weeks prior to his arrest. (Doc. 1 at 3).

that ran along the edge of East Bay Street, such that "if another vehicle would have been driving [along East Bay Street], it would have impeded the vehicle's flow and [it] would have had to drive around to avoid [McBride's] vehicle."  (Doc. 41 at 20.)

The video from the dash cam in Fragoso's patrol vehicle – which Fragoso had never reviewed (Doc. 41 at 21), and the existence of which came as a complete surprise to the prosecution (Doc. 41 at 22) – tells a different story.  It shows McBride stopping with the nose of his car several feet short of the drainage depression that bordered East Bay Street – something that, to his credit, Fragoso admitted at the hearing:

> Q  Does it appear to you that the black Charger came to a complete stop before the middle of the intersection?
>
> A  Yes, ma'am. Prior to that.
>
> Q  But earlier you testified that the vehicle came to a complete stop with its nose or the front of the vehicle in the middle of the intersection.
>
> A  Yes, ma'am.
>
> Q  After reviewing this video, does it seem as though your sworn affidavit and your testimony earlier were incorrect?
>
> A  It appears that way. I don't know if the vehicle was still rolling. It possibly could have stopped. It was just very slow-looking.
>
> Q  Would you like to replay the video?
>
> A  Yes, ma'am.
>
> MS. KELLY:  May we replay 4(b)-1, please.
>
> (Exhibit published.)
>
> MS. KELLY:  Stop.
>
> THE WITNESS:   Yes, ma'am.
>
> BY MS. KELLY:
>
> Q  Does it appear that the vehicle – or does it appear that your earlier testimony and your sworn affidavit from October 24th of 2017 were incorrect?
>
> A  Yes, ma'am. It looked like he stopped prior to that water canal.

(Doc. 41 at 27-28).[3]

The dash cam video did not show any stop bar (or, for that matter, a crosswalk) in the lane on 10th Street in which McBride was travelling. The Government did not introduce any other evidence suggesting that such a stop bar existed on the night in question. While the video was not crystal clear, it was clear enough to show that there *was* a stop bar in Fragoso's lane on East Bay Street. Thus, the fact that the video does not show a stop bar in the southbound lane on 10th Street suggests that there was no stop bar there (or at least not a "clearly marked" one, as the statute requires), and therefore McBride did not commit a violation of Fla. Stat. § 316.123(2)(a) when he stopped, as the video shows, several feet short of the intersection. Because of this, and because the dash cam video is so at odds with Fragoso's report and testimony as to where McBride stopped in relation to the intersection, the Court concludes that Fragoso did not have a reasonable belief that McBride violated Fla. Stat. § 316.13(2)(a), and he therefore lacked probable cause to pull McBride over. His statements to the contrary are just not credible. The motion will be granted.

Moreover, even if the seizure had been valid, Fragoso lacked probable cause for the subsequent search.[4] Fragoso wrote in his report and testified that he saw loose marijuana, or "shake," in the console, giving him a basis to search the car. (Doc. 28-1 at 3; Doc. 41 at 37). But he did not collect this loose marijuana, and the photos he took of the console do not show it. (Doc. 41 at 37, 52). He wrote in his report that he had turned on his body camera during the encounter

---

[3] Although it was not cited as justification for the stop, the video also contradicts Fragoso's assertion that he saw McBride travelling "at a high rate of speed" as he approached the stop sign. (Doc. 41-1 at 3). Buildings blocked any view of McBride's Dodge until it was a short distance – perhaps 50 or 75 feet – from the intersection. Over that short span, the Dodge does not appear to be moving especially quickly. It also does not appear that McBride had to brake hard to stop in time, as the video does not show the car skidding or having its front end suddenly dip.

[4] McBride refused to consent to a search of his vehicle. (Doc. 41 at 36).

with McBride, which presumably would have shown the marijuana. But his body camera did not record anything, either because Fragoso never turned it on or because of technical problems.

On the other hand, shortly after Fragoso stopped McBride, he was joined by Officer Matthew Griffin of the Winter Garden Police Department. (Doc. 41 at 55). Griffin's body cam did record during the encounter. (Doc. 41 at 56). Griffin testified that, although he looked in McBride's vehicle with a flashlight, he did not see any loose marijuana, and the recording from his body camera did not show any loose marijuana. (Doc. 41 at 57, 59, 63). Again, under these circumstances, the Court finds that Fragoso lacked probable cause to believe that McBride's Dodge contained contraband, and therefore his search was conducted in violation of the Fourth Amendment.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the Motion to Suppress (Doc. 28) is **GRANTED**. The Court will suppress the drugs, the gun, the cash, and any statements made by McBride after being pulled over.

**DONE** and **ORDERED** in Orlando, Florida on July 16, 2019.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant